# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KATHY MYERS | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: 17-CV-2239-ELH |
| MARYLAND DEPARTMENT | * | |
| OF AGRICULTURE | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## DEFENDANT'S MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

BRIAN E. FROSH
Attorney General of Maryland

Thomas F. Filbert
Assistant Attorney General
Federal Bar No. 29502
Office of the Attorney General
50 Harry S. Truman Parkway
Annapolis, MD  21401
Thomas.Filbert@Maryland.gov
410-841-5883
Attorneys for Defendant MDA

October 30, 2017

**TABLE OF CONTENTS**

INTRODUCTION…………………….……………………………………………..1

STATEMENT OF FACTS……...............................................................................3

    A. Plaintiff worked as an ARCS II, assigned to the Kent Soil
    Conservation District, until May 2016, when MDA terminated
    her employment for misconduct………………………….…………………..3

    B. In February 2016, Plaintiff interviewed, but was not selected, for
    an ARCS III position within MDA's Water Quality Cost-Share
    Program……………………………………………………………………….5

    C. In May 2016, MDA terminated Plaintiff's employment for
    misconduct……………………………………………………………….…..7

    D. When MDA terminated her employment in May 2016
    for misconduct, Plaintiff's job performance was
    unsatisfactory…………………………………………………...…………...10

ARGUMENT……………………………………………………………………14

  I. PLAINTIFF FAILED TO STATE A CLAIM FOR EMPLOYMENT
    DISCRIMINATION………………………………………………………14

    A. Standard of Review………………………………………………………14

    B. Discrimination Claims under Title I of the ADA………………………...15

       1.  Failure to Hire Claim…………………………………………………...16
       2.  Wrongful Discharge Claim……………………………………………...17
       3.  Hostile Work Environment Claim……………………………………….19

    C. Retaliation Claim………………………………………………………22

  II. PLAINTIFF'S HIPAA CLAIM SHOULD BE
    DISMISSED FOR LACK OF SUBJECT MATTER
    JURISDICTION…………………………………………………………...23

    A. Standard of Review………………………………………………………14

    B. Plaintiff has no private right of action for MDA's alleged
    violation of HIPAA…………………………………………………………24

  III. MDA IS ENTITLED TO SUMMARY JUDGMENT……………………………25

A. Standard of Review…………………………………………………………………….25

B. Plaintiff cannot establish an ADA failure to hire
claim…………………………………………………………………….…….…...26

C. Plaintiff cannot establish an ADA wrongful discharge claim………………………29

D. Plaintiff cannot establish an ADA hostile work environment claim……………….....31

E. Plaintiff cannot establish a retaliation claim…………………………………….......33

CONCLUSION…………………………………………………………………………….35

## TABLE OF AUTHORITIES

### Cases

*Acara v. Banks,* 470 F.3d 569 (5th Cir. 2006)………………………………………………24

*American Chiropractic v. Trigon Healthcare,*
  367 F.3d 212 (4th Cir. 2004)..................................................................................15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)………………………………...25, 26

*Ashcroft V. Iqbal*, 556 U.S. 662 (2009)…………………………………….........14, 17, 18

*Baird v. Rose, 192 F.3d 462* (4th Cir. 1999)…………………………………………….16

*Balas v. Huntington Ingalls Indus.*, 711 F.3d 401 (4th Cir. 2013)……………………….........33

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)………………………………….14, 17, 18

*Belyakov v. Medical Science & Computing*, 86 F. Supp. 3rd
  430 (4th Cir. Maryland 2015)…………………………………………………...24, 32

*Bennett v. Kaiser Permanente*, 931 F.Supp.2d 697 (4th Cir. 2013)……………………...27, 30, 32

*Bey v. Shapiro Brown & Alt, LLP,* 997 F.Supp.2d 310 (D. Md. 2014)…………………………16

*Board of Trustees of the Univ. of Alabama v. Garrett,* 531 U.S. 356 (2001)……………….............3

*Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514 (4th Cir. 2003)……………………...25

*Brady v. Board of Education of Prince George's County,*
  222 F. Supp.3d 459 (D. Md. 2016)…………………………………………………...18, 19, 23, 35

*Causey v. Balog,* 162 F.3d 795 (4th Cir. 1998)……………………………………………34

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)……………………………………………25

*Chadha v. Northrop Grumman Systems Corporation, RDB-16-1087*
  *WL 3226861 (D. Md. July 31, 2017)*……………………………………………………33

*Coleman v. Maryland Court Appeals*, 626 F.3d 187, 191 (4th Cir. 2010)………………………22

*DeJarnette v. Corning, Inc.*, 133 F.3d 293 (4th Cir. 1998)……………………………………...19

*Dodd v. Jones 623 F.3d 563, 569* (8th Cir. 2010)……………………………………….......24

*Dowe v. Total Action against Poverty in Roanoke Valley,*
  145 F.3d 653 (4th Cir. 1998)………………………………………………………….34

*Drewitt v. Pratt*, 999 F2d. 774 (4th Cir. 1993)……………………………………………..26

*E.E.O.C. v. Xerxes Corp.,* 639 F.3d 658 (4th Cir. 2011)…………………………………………21

*Ennis v. National Association of Business and Educational Radio, Inc.,* 53 F.3d 55 (4th Cir. 1995)…………………………………………………18, 27

*Erickson v. Pardus,* 551 U.S. 89, 94 (2007)…………………………………………………16

*Evans v. B.F. Perkins Co.*, 166 F.3d 642 (4th Cir. 1999)………………………………………23

*Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954 (4th Cir. 1996)……………………19, 28, 30, 32

*Fayetteville Inv'rs v. Commercial Builders, Inc.,* 936 F.2d 1462 (4th Cir. 1991)……………15

*Felty v. Graves-Humphreys Co.*, 818 F.2d 1126 (4th Cir. 1987)……………………………..26

*Figueroa v. Geithner,* 711 F.Supp.2d 562 (D. Maryland 2010)…………………………......28

*Fox v. GMC,* 247 F.3d 169 (4th Cir. 2001)…………………………………………………19

*Francis v. Booz, Allen & Hamilton, Inc.,* 452 F.3d 299 (4th Cir. 2006)…………………………25

*Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009)…………………………………………14

*Gentry v. East West Partners Club Management Company, Inc., et al.,* 816 F.3d 228 (4th Cir. 2016)……………………………………………….........16, 26

*Gibson v. Marjack Co.,* 718 F. Supp. 2d 649 (D. Md. 2010)…………………………………34

*Gibson v. Old Town Trolley Tours of Wash., D.C.,* 160 F.3d 177 (4th Cir. 1998)………………………………………………………...35

*Heiko v. Colombo Savings Bank, F.S.B.,* 434 F.3d 249 (4th Cir. 2006)…………………………26

*Jones v. Calvert Grp., Ltd.,* 551 F.3d 297 (4th Cir. 2009)………………………………………32

*Jordan v. Maryland Transit Administration,* MJG-15-3253, 2017 WL 445227  (D. Md. Feb. 2 2017)……………………………………………………23

*Kerns 440 v. United States*, 585 F.3d 187 (4th Cir. 2009)……………………………………24

*King v. Rumsfeld,* 328 F.3d 145 (4th Cir. 2003)………………………………………………19

*Laughlin v. Metro Washington Airports Auth,* 149 F3d 253 (4th Cir. 1998)……………………22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)………………………25

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)………………………………………..26

*Mitchell v. Henderson*, 128 F. Supp. 2d 298 (D. Md 2001)……………………………………15

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)……………………………………...2

*Phillips v. LCI Int'l Inc.*, 190 F.3d 609 (4th Cir. 1999)……………………………………………15

*Reyazuddin v. Montgomery County, Maryland, 789* F.3d 407(4th Cir. 2015)…………………15

*Reynolds v. American Nat. Red Cross*, 701 F.3d, 143 (4th Cir. 2012)……………..........22, 29, 34

*Richmond, Fredericksburg & Potomac R.R. Co. v.*
    *United States*, 945 F.2d 765 (4th Cir. 1991)…………………………………………………….. 23

*Rohan v. Networks Presentations LLC*, 375 F.3d 266 n. 9 (4th Cir. 2004)…………………17, 29

*Rubino v. New Action Mobile Indus., LLC,* 44 F.Supp.3d 616 (D.MD.2014)………….17, 18, 19

*Saah v. Thumel,* RDB-15-2425, WL 491221 (D. Md. Feb. 7, 2017)………………………29, 34

*Spriggs v. Diamond Auto Glass*, 242 F.3d 179 (4th Cir. 2001)………………………………25

*Shin v. Univ. of Md. Med. Sys. Corp.,* 369 Fed.Appx. 472 (4th Cir.2010)………………………18

*Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.,* 31 F.3d 209 (4th Cir. 1994)…………………….. 17, 18

*University of Colorado Hosp. v. Denver Pub. Co.,*
    340 F. Supp.2d 1142 (D. Col. 2004)……………………………………………………………..24

*Young v. Giant Food Stores, LLC,* 108 F.Supp.3d 301(D. Md. 2015)…………………17, 18, 19

## Statutes

42 U.S.C. § 2000e-5(e)(1)……………………………………………………………………..2

42 U.S.C. § 12111(8)……………………………………………………………………………29

42 U.S.C. § 12203(a)……………………………………………………………………...22, 34

Md. Code Ann., Agric. § 8-306………………………………………………………………...3

Md. Code Ann., State Gov't §§ 10-201…………………………………………………………10

Md. Code Ann., State Pers. & Pens. § 7-201……………………………………………….2, 27

Md. Code Ann., State Pers. & Pens. § 11-104……………………………………….......10

Md. Code Ann., State Pers. & Pens. § 11-104(6)……………………………………………8, 9

Md. Code Ann., State Pers. & Pens. § 11-106………………………………………….3, 8, 30

Md. Code Ann., State Pers. & Pens. §§ 12-201……………………………………………11

**Rules**

Fed. R. Civ. P. 8(a)(2)………………………………………………………………14

Fed. R. Civ. P. 12(b)(1)……………………………………………………………..23

Fed. R. Civ. P. 12(b)(6)…………………………………………………………14, 15

Fed. R. Civ. P. 10(c)………………………………………………………………..15

Fed. R. Civ. P. 56……………………………………………………………...25

Fed. R. Civ. P. 56(c)………………………………………………………..25

Fed. R. Civ. P. 56(e)(2)……………………………………………………..25

**Regulations**

COMAR 17.04.05.04B(8)…………………………………………………………8

COMAR 17.04.05.04B(12)……………………………………………………8, 10

COMAR 17.04.05.04B(14)……………………………………………………8, 10

COMAR 17.04.07……………………………………………………………10

COMAR 28.02.01……………………………………………………………10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KATHY MYERS | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: 17-CV-2239-ELH |
| MARYLAND DEPARTMENT | * | |
| OF AGRICULTURE | * | |
| Defendant. | * | |

*   *   *   *   *   *   *   *   *   *   *   *   *

**DEFENDANT'S MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

### INTRODUCTION

Plaintiff, Kathy Myers, brought this action for discrimination in employment against the Maryland Department of Agriculture ("MDA") pursuant to the Americans with Disabilities Act of 1990.[1] (ECF 1, Complaint, p. 3.)  In May 2016, MDA terminated Plaintiff's employment for misconduct.  At that time, Plaintiff was employed as an Agricultural Resource Conservation Specialist ("ARCS") II, and was assigned to the Kent Soil Conservation District located in Chestertown, Maryland.

Plaintiff alleges that MDA discriminated against her based on her "severe depression." (ECF, p. 5.)  Plaintiff further alleges that MDA's discriminatory conduct includes: (1) "failure to hire [her],"[2] (2) "termination of [her] employment," (3) "unequal

---

[1] Plaintiff also cites as grounds for jurisdiction HIPAA and, as relevant state law, COMAR 06.01.01.66—a non-existent regulation.  (ECF, p. 4.)

[2] Several months before her employment was terminated, Plaintiff interviewed for another ARCS position with MDA's Agricultural Water Quality Cost-Share Program located in Annapolis, Maryland, but was not selected.

terms and conditions of her employment," (4) "retaliation," and (5) "HIPA[A] Laws." (ECF, p. 5.)  Plaintiff, however, has failed to state a claim upon which relief can be granted. Moreover, all claims of discrimination that occurred before October 24, 2015—that is, more than 300 days before August 18, 2016, the date that Plaintiff filed her Charge of Discrimination against MDA with the Maryland Commission on Civil Rights (ECF 1-2, p.2.)—must be dismissed because they are time-barred.[3]

MDA also is entitled to summary judgment in this matter (as demonstrated in exhibits attached to this memorandum).  First, MDA's decision not to hire Plaintiff for a different position at MDA was not discriminatory.  Indeed, no one in MDA's chain-of-command was aware that Plaintiff had a disability or regarded her as having a disability. For this reason, MDA could not, and did not, take this action on the basis of her disability. Instead, following the process set forth in State law (Md. Code Ann., State Pers. & Pens. §§ 7-201 *et seq.*), MDA had a legitimate, non-discriminatory reason not to hire Plaintiff for this position — that being, it selected an applicant deemed more qualified to fill this position.  Likewise, MDA's decision to terminate Plaintiff's employment was not discriminatory.  Again, no one in MDA's chain-of-command was aware that Plaintiff had a disability or regarded her as having a disability; and, like its earlier action, could not, and did not, take this action on the basis of her disability.  Instead, following the process set

---

[3] In her Complaint, Plaintiff states the alleged discriminatory acts occurred on "July 2014 – May 25, 2016."  (ECF1, p. 5.)  Under 42 U.S.C. § 2000e-5(e)(1), an employee must file a discrimination charge within 300 days after the occurrence of an alleged unlawful employment practice.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). A claim is time-barred if not filed within this time limit.  *Id*. at 109.

forth in State law (Md. Code Ann., State Pers. & Pens. § 11-106), MDA had a legitimate, non-discriminatory reason for terminating Plaintiff's employment — that being, it terminated Plaintiff's employment based on her misconduct (which action was upheld on appeal to the State's Office of Administrative Hearings).

In addition, Plaintiff's requested relief for monetary damages, including (a) "unemployment benefits" (she was denied these benefits) and (b) "punitive money damages." (ECF 1), is barred by sovereign immunity. *See Bd. of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 368-74 (2001) (holding that Congress did not validly abrogate the States' sovereign immunity under Title I of the ADA). Finally, Plaintiff has no private cause of action for MDA's alleged violation of the Health Insurance Portability and Accountability Act ("HIPAA").

## STATEMENT OF FACTS

### A. Plaintiff worked as an ARCS II, assigned to the Kent Soil Conservation District, until May 2016, when MDA terminated her employment for misconduct.

Plaintiff was employed by MDA as an ARCS II until it terminated her employment in May 2016. She was assigned to the Kent Soil Conservation District. (Ex. 1, Aff. of Byron Petrauskas, MDA Program Manager, Office of Resource Conservation, ¶¶ 5, 16). Like other established soil conservation districts in Maryland, the Kent Soil Conservation District is "a political subdivision of the State, and a public body corporate and politic, exercising public powers." Md. Code Ann., Agric. § 8-306. Its powers include "[d]evelop[ing] comprehensive plans for conserving soil resources and controlling and preventing soil erosion" within the geographical boundaries of Kent County, Maryland.

3

(*Id*.)  Like other soil conservation districts, the Kent Soil Conservation District is staffed with federal, State, and district employees. (Ex. 1, Petrauskas Aff., ¶ 5).

Plaintiff's primary job duty as an ARCS II, as specified in her Position Description, was to develop conservation plans for farm operations covering a certain number of acres of agricultural land annually.  *Id.*, ¶ 6.  More specifically, Plaintiff was tasked with developing conservation plans for farm operations located in Kent County, Maryland covering a minimum of 2,500 acres annually that:

  (1) met the needs of a particular farm operation; and

  (2) reduced soil erosion, promoted the wise use of natural resources, and improved

       water quality through the establishment of conservation practices on the farm.

*Id*. Plaintiff was a part of a team of conservation specialists tasked with developing conservations plans throughout Maryland in the State's effort to clean-up the waters of the State and, in particular, the Chesapeake Bay.[4]  Plaintiff's workload was comparable to other MDA ARCS II personnel assigned to district offices in the State performing similar work.  *Id.  See also* Plaintiff's ARCS II Position Description.  (Ex. 2, Affidavit of Momoh Conteh, Administrator, MDA Human Resources Section, Att. A.)

---

[4] Plaintiff's immediate supervisor was David Mister, Area Coordinator, MDA Office of Resource Conservation, who reported to Byron Petrauskas, the Program Manager for this office.   Mr. Petrauskas, in turn, reported to Assistant Secretary Hans Schmidt, the Appointing Authority for this unit.   These individuals formed Plaintiff's chain-of-command, and they all reported to Joseph Bartenfelder, the Secretary of Agriculture. (Ex. 1, Petrauskas Aff., ¶ 16.)  Karen Miller, District Manager, Kent Soil Conservation District, who was a District employee, also was tasked with supervising Plaintiff.  (Ex. 9, Miller Aff., ¶ 4.)

**B.  In February 2016, Plaintiff interviewed, but was not selected, for an ARCS III position with MDA's Water Quality Cost-Share Program.**

In February 2016, Plaintiff, and four other individuals, interviewed for an ARCS III position with MDA's Water Quality Cost-Share Program, a unit of the department's Office of Resource Conservation.   The interviews were conducted by a three-member panel comprised of the following MDA employees: (1) Norman Astle, Program Manager, Water Quality Cost-Share Program; (2) Betty Marose, ARCS III, Water Quality Cost-Share Program; and (3) Rowland Agbede, DT Programmer Analyst Lead/Advanced, Office of Resource Conservation.  *See* Affidavits of three-member panel: (Ex. 3, Astle Aff., ¶¶ 4-5.) (Ex. 4, Marose Aff., ¶¶ 4-5.) (Ex. 5, Agbede Aff., ¶¶ 4-5.)  Mr. Astle, Ms. Marose, and Mr. Agbede have diverse backgrounds.  Mr. Astle is a Caucasian male.  Ms. Marose is a Caucasian female.  Mr. Agbede is an African-American male.[5]  (Ex. 2, Conteh Aff., ¶ 8.)

None of the members of this panel worked at, were assigned to, or were otherwise a part of, the Kent Soil Conservation District.  *See* Affidavits of three-member panel: (Ex.3, Astle Aff., ¶ 7.) (Ex. 4, Marose Aff., ¶ 7.) (Ex. 5, Agbede Aff., ¶ 7.)  None were aware that

---

[5] Before this three-member panel was formed, Mr. Astle, the Program Manager, asked Rebecca Chamberlin, ARCS III, Water Quality Cost-Share Program, to serve on the panel. Ms. Chamberlin is a Caucasian female. (Ex. 3, Astle Aff., ¶ 12.)  After she initially agreed to do so, Ms. Chamberlin advised Mr. Astle that she no longer wished be on the panel. *Id.* Mr. Astle then asked Ms. Marose to serve on the panel in Ms. Chamberlin's place; and Ms. Marose agreed to do so.  *Id.*  In preparing its response to this Complaint, MDA found a record showing that Thomas Bagamsah, ARCS III, Water Quality Cost-Share Program, may also have been considered for this panel. (Ex. 2, Conteh Aff., ¶ 9.)  However, both Mr. Astle and Mr. Bagamsah agree that Mr. Astle did not ask Mr. Bagamsah to serve on this panel. (Ex. 3, Astle Aff., ¶ 12.) (Ex. 10, Bagamsah Aff., ¶ 5.) For this reason, it is unclear why Mr. Bagamsah's name appears on this record.  (Ex. 2, Conteh Aff., ¶ 9.)

Plaintiff had a disability and, in particular, had depression; nor did they regard her as having a disability or being depressed.  In addition, none of the panel members were aware that Plaintiff had found "medical documentation left in a common area" (presumably at the Kent Soil Conservation District office) and had "reported [this] breach" to MDA's Fair Practice Officer, James Wallace.  (ECF 1, Complaint, Section III.E, ¶ 1).[6]  (Ex.3, Astle Aff., ¶¶ 8-9.) (Ex. 4, Marose Aff., ¶¶ 8-9.) (Ex. 5, Agbede Aff., ¶¶ 8-9.)

After interviewing the applicants, the panel rated each one, ranking three of them higher than Plaintiff, and recommending Saiping Tso, an Asian female, to be selected for this position.  (Ex. 3, Astle Aff., ¶ 11.) (Ex. 4, Marose Aff., ¶ 11.) (Ex. 5, Agbede Aff., ¶ 11.)  The panel's written justification for this selection was as follows:

> Candidate [Saiping Tso] has a familiarity with agricultural cost-share programs (USDA/NRCS), administering programs, design and planning conservation practices.  Applicant has a general understanding of MDA's agricultural cost-share program.  Candidate has worked with conservation programs to ensure compliance.  She possesses the ability to develop reports, edit manuals, create

---

[6] In her Complaint (ECF 1.), Plaintiff alleges that she found "[m]edical documentation left in common area." (ECF 1.)  In a document attached to her Complaint (ECF 1, Document 1-2, page 6.), Plaintiff states that she found copies of her doctor's notes on a copier. Plaintiff, however, failed to state anything more about these notes (*e.g.*, who authored them, when they were issued, and what the notes said); nor does she state when she found these notes and where she found them, other than on a copier—without specifying its location (presumably the copier is located in the Kent Soil Conservation District office, Chestertown, Maryland).  Plaintiff did not inform any of the individuals in her chain-of-command about this complaint. They only learned about it when MDA was asked to respond to the August 2016 Charge of Discrimination that Plaintiff filed with MCCR several months after MDA terminated Ms. Myers's employment.  (Ex. 1, Petrauskas Aff., ¶ 12.) (Ex. 6, Schmidt Aff., ¶ 6.) (Ex. 8, Mister Aff., ¶ 10.)  Likewise, Plaintiff did not inform Karen Miller, District Manager, Kent Soil Conservation District office, who also supervised Plaintiff, about this matter.  Ms. Miller only learned about it when MDA contacted her about this Complaint. (Ex. 9, Miller Aff., ¶ 5.) In her Complaint, Plaintiff incorrectly identified Mr. Wallace as MDA's EEO Officer.  (ECF 1, p. 6.)  Mr. Wallace actually served as MDA's Fair Practice Officer.  (Ex. 2, Conteh Aff., ¶ 12.)

fact sheets, newsletters, *etc*. Candidate has experience developing nutrient management plans associated with conservation plan practices.

(Ex. 4, Marose Aff., ¶ 11.) (Ex. 5, Agbede Aff., ¶ 11.) *See also* Interview Evaluation Sheet for Saiping Tso (Ex. 2, Conteh Aff., Att. E.); *compare* Interview Evaluation Sheet for Plaintiff. *Id*., Att. F.

The panel's work was reviewed and approved by: (1) Momoh Conteh, Administrator, MDA's Human Resources Section; (2) James Wallace, MDA's Fair Practice Officer; and (3) Assistant Secretary Hans Schmidt, the Appointing Authority for MDA's Office of Resource Conservation and its Water Quality Cost-Share Program. (Ex. 2, Conteh Aff., Atts. E and F.)

Shortly thereafter, Assistant Secretary Schmidt accepted the panel's determination, and hired Saiping Tso, the highest ranked applicant for the ARCS III positon. (Ex.6, Schmidt Affidavit, ¶ 6.) When he made this decision, neither Mr. Schmidt, nor anyone else in Plaintiff's chain-of-command, was aware that Plaintiff had a disability and, in particular, had depression; nor did they regard her as having a disability or being depressed. Similarly, neither Mr. Schmidt, nor anyone else in Plaintiff's chain-of-command, was aware of Plaintiff's reported complaint to Mr. Wallace about finding "medical documentation left in common area." (ECF 1, Complaint, Section III.E, ¶ 1.) (Ex.6, Schmidt Affidavit, ¶ 6.) (Ex. 1, Petrauskas Aff., ¶ 10.) (Ex. 8, Mister Aff., ¶ 7.)

**C. In May 2016, MDA terminated Plaintiff's employment for misconduct.**

In May 2016, Assistant Secretary Schmidt terminated Plaintiff's employment as an ARCS II for misconduct. (Ex.6, Schmidt Affidavit, ¶ 7.) As specified in the Notice of

Termination, Plaintiff was charged with violating: (1) COMAR 17.04.05.04B(14) (Using leave contrary to law or policy); and (2) COMAR 17.04.05.04B(12) (failing to obey a lawful order given by a supervisor). *Id.* *See also* MDA's Notice of Termination to Plaintiff. (Ex. 2, Conteh Aff., Att. G.)  When Mr. Schmidt took this action, neither he nor anyone else in Plaintiff's chain-of-command was aware that Plaintiff had a disability and, in particular, had depression; nor did they regard her as having a disability or being depressed. Similarly, neither Mr. Schmidt, nor anyone else in Plaintiff's chain-of-command, was aware of Plaintiff's reported complaint to Mr. Wallace about finding "medical documentation left in common area."  (ECF 1, Complaint, Section III.E, ¶ 1.) (Ex.6, Schmidt Affidavit, ¶ 6.) (Ex. 1, Petrauskas Aff., ¶ 10.) (Ex. 8, Mister Aff., ¶ 7.)

This was not the first time that MDA had disciplined Plaintiff for misconduct.  Nine months earlier, in August 2015, MDA suspended Plaintiff without pay for four work days (four ten-hour days or 40 hours) for violating: (1) COMAR 17.04.05.04B(8) (Engaging in conduct involving dishonesty, fraud, deceit, misrepresentation, or illegality by falsifying her time sheet); (2) COMAR 17.04.05.04B(14) (Using leave contrary to law or policy); and (3) (COMAR 17.04.05.04B(12) (failing to obey a lawful order given by a supervisor). (Ex. 1, Petrauskas Aff., ¶9.)  *See also* MDA's Disciplinary Action, suspending Plaintiff. (Ex. 2, Conteh Aff., Att. D.)

Before deciding to terminate her employment, MDA, as required under State law, met with Plaintiff to: (1) complete its investigation of Plaintiff's alleged misconduct; and (2) afford her an opportunity to provide information that might mitigate her alleged misconduct.  *See* Md. Code Ann., State Pers. & Pens. § 11-106 (requiring that the

8

Appointing Authority take certain steps before imposing discipline, including: (1) investigating the misconduct; (2) meeting with the employee; and (3) considering mitigating circumstances).  Plaintiff was represented by a union representative at this meeting.  (Ex. 1, Petrauskas Aff. ¶ 15.) (Ex. 6, Schmidt Aff., ¶ 8.)  *See also* MDA's May 12, 2016 letter to Plaintiff scheduling this meeting.  (Ex. 2, Conteh Aff., Att. H.)

After meeting with Plaintiff and her representative, MDA determined that Plaintiff's employment should be terminated, having found her statements and arguments in this matter, including those intended to mitigate her actions, unpersuasive.  (Ex. 6, Schmidt Aff., ¶ 8.)  Once again, Plaintiff did not inform MDA that she had a disability and, in particular, had depression.  In addition, she did not claim that MDA's action in this matter was retaliatory.  (Ex.1, Petrauskas Aff., ¶ 15.)

Mr. Schmidt's action was approved by the Secretary of Agriculture, Joseph Bartenfelder.[7]  (Ex. 7, Bartenfelder Aff., ¶ 6.)  Like Mr. Schmidt and others in Plaintiff's chain-of-command, Secretary Bartenfelder was not aware that Ms. Myers had a disability and, in particular, had depression; nor did he regard her as having a disability or being depressed.  Likewise, Secretary Bartenfelder was not aware of any complaint that Plaintiff may have had concerning the handling of any of her medical documentation.  *Id*., ¶ 7.  *See also* MDA's Notice of Termination to Plaintiff.  (Ex. 2, Conteh Aff., Att. G.)

Plaintiff appealed MDA's action to terminate her employment to the Office of Administrative Hearings ("OAH").  On October 20, 2016, OAH conducted a contested

---

[7]   Under Md. Code Ann., State Pers. & Pens., § 11-104(6), the termination of a State employee's employment must be approved by the head of the principal unit.

case hearing in this matter.  (Ex. 2, Conteh Aff., ¶ 15.)  *See* Md. Code Ann. State Gov't §§ 10-201 *et seq.*; COMAR 17.04.07 and COMAR 28.02.01.  On December 5, 2016, OAH issued its decision, concluding, as a matter of law, that MDA lawfully terminated Plaintiff's employment, citing: (1) Md. Code Ann., State Pers. & Pens., § 11-104; (2) COMAR 17.04.05.04B(12) (failing to obey a lawful order given by a supervisor); and (3) COMAR 17.04.05.04B(14) (using leave contrary to law or policy). *See* OAH Decision. (Ex. 2, Conteh Aff., Att. I.)  OAH advised Plaintiff in writing of her right to file a petition for judicial review to the applicable State circuit court within 30 days of the decision's mailing date.  *Id.*  Plaintiff, however, failed to exercise this right.  (Ex. 2, Conteh Aff., ¶ 15.)

### D. When MDA terminated her employment in May 2016 for misconduct, Plaintiff's job performance was unsatisfactory.

In May 2016, when MDA terminated Plaintiff's employment for misconduct, Plaintiff was not meeting the performance goals set forth in her Position Description.  (Ex. 1, Petrauskas Aff., ¶ 14.)  Plaintiff's inability to meet these goals was longstanding.  In June 2015, MDA rated Plaintiff's job performance for the one-year period between July 1, 2014 and June 30, 2015, barely satisfactory, largely because Plaintiff fell well-short of meeting the 2,500-acre planning goal called-for in her Position Description.  (Ex. 8, Mister Aff., ¶ 12.)  Numerically, Plaintiff's overall rating for this time period was 1.75[8]—the

---

[8]  This score was calculated by adding the scores of all the performance and behavioral elements listed on the evaluation form together and then dividing this total score by the number of elements rated. Plaintiff's total score was 70 and the total number of elements rated was 40 (70 divided by 40 equals 1.75).  (Ex. 2. Conteh Aff. ¶ 5.)  While Plaintiff received a satisfactory rating in certain criteria used to calculate this score, she received an unsatisfactory rating in other criteria—foremost among them were the following criteria listed under "Overall Work Quality": (a) Criterion No. 11 ("Prepares the conservation plan

lowest possible numerical score one can have and still receive a "satisfactory" rating.[9]  *See* Plaintiff's Performance Evaluation for the one-year period ending June 30, 2015. (Ex. 2, Conteh Aff., Att. B.)  Notably, Plaintiff did not challenge the rating she received.  *Id*., ¶ 5. *See* Md. Code Ann., State Pers. & Pens. §§ 12-201 *et seq*., specifying the grievance procedure for State employer-employee disputes that Plaintiff could have used to challenge MDA's evaluation of her.

In response to Plaintiff's difficulty in meeting the 2,500-acreage goal established in her Position Description, MDA devised a Performance Improvement Plan ("PIP") that, among other things: (1) provided additional training for her; and (2) removed other duties she had so that she would have more time for developing conservation plans.  (Petrauskas Aff., ¶ 8.) (Ex. 8, Mister Aff., ¶ 6.)  *See* Plaintiff's PIP. (Ex. 2. Conteh Aff., Att. C.)  The plan was scheduled to last six months (from July 1, 2015 until December 31, 2015).  Under it, Plaintiff was tasked with developing conservation plans covering 1,200 acres of land by the PIP's December 31, 2015 end-date.  (Ex. 1, Petrauskas Aff., ¶ 8.) (Ex. 8, Mister Aff., ¶ 6.).  Despite these efforts to assist Plaintiff, she failed to meet this goal. (Ex. 1, Petrauskas Aff. ¶ 8) (Mister Aff., ¶ 6.)

MDA recognized that Plaintiff's inability to meet this goal could partly be explained by the fact that, during this six-month period, she took FMLA leave for more than a month

---

in accordance with NRCS, MDA standards"); and (b) Criterion No.14 ("Meets planning goals for Planner II which is 2,500 acres").  (Ex. 2, Conteh Aff., Att. B.)

[9]  Each performance category has a numerical scoring range.  The numerical scoring range for receiving: (1) an "outstanding" rating is between 3.00 and 2.75; (2) a "satisfactory" rating is between 2.74 and 1.75; and (3) and an "unsatisfactory" rating is between 1.74 and 1.00. (Ex. 2, Conteh Aff., Att. B.)

between November 18, 2015 and January 5, 2016.  (Ex. 1, Petrauskas Aff., ¶ 11.) (Ex. 8, Mister Aff., ¶ 8.)  Notably, before, during, and after taking this leave, Plaintiff did not inform her supervisors that she had a disability and, in particular, that she had depression. *See also* November 4, 2015 doctor's note attached to Complaint specifying that Plaintiff has a "chronic health condition," but does not identify that condition. (ECF 1.)[10]  Indeed, while employed by MDA, Plaintiff never informed anyone in her chain-of-command that she had a disability and, in particular, that she had depression; nor did she ever request an accommodation for a disability from these individuals. (Ex. 1, Petrauskas Aff., ¶ 10.) (Ex. 6, Schmidt Aff., ¶ 6.) (Ex. 8, Mister Aff., ¶ 7.)

On January 7, 2016, shortly after she had returned to work after taking FMLA-approved leave, Plaintiff met with Karen Miller, District Manager, Kent Soil Conservation District, who also was tasked with supervising Plaintiff.  At that meeting, Ms. Miller asked Plaintiff whether she had any "limitations or restrictions" which would prevent her from doing her job since Plaintiff had submitted a doctor's note indicating that her health condition was job-related.  Plaintiff responded: "No." (Ex. 9, Miller Aff., ¶ 6.)  Ms. Miller made a contemporaneous note of this meeting.  *See* Miller's note.  (Ex. 9, Miller Aff., Att. A.)  Plaintiff's statement that she could perform her job without any restrictions was confirmed by her doctor.  On January 8, 2016, Plaintiff handed Ms. Miller a note from her

---

[10] In an earlier FMLA submission to MDA's Human Resources Section, Plaintiff's health care provider did describe in more detail certain medical facts related to Plaintiff's health condition for which she sought intermittent leave.  This submission and other medical information about Plaintiff was kept in her health care file—a file separate and distinct from Plaintiff's personnel file.  None of this information, however, was shared with anyone at MDA, including those in Plaintiff's chain-of-command.  (Ex. 2. Conteh Aff., ¶ 16.)

doctor indicating that Plaintiff "**MAY** return to work with the following conditions: none."
(Emphasis in original.)  *See* Doctor's note.  (Conteh Aff., Att. J.)  Ms. Miller forwarded
this note to MDA's Human Resources Section in Annapolis, Maryland.   (Ex. 9, Miller
Aff., ¶ 7.)

Due to Plaintiff's absence from work during the six-month PIP period, MDA, in
January 2016, granted Plaintiff a two-month extension to meet the conservation plan
acreage goal called-for in the PIP.  Plaintiff, however, also missed this deadline for meeting
this goal and other subsequent deadlines set for her.[11]  (Ex. 1, Petrauskas Aff., ¶ 11.) (Ex.
8, Mister Aff., ¶ 8.)

When Plaintiff's employment was terminated in May 2016, she was still far short
of meeting her 1,200-acre December 31, 2015 PIP goal, much less, her annual goal of
developing conservation plans covering, at a minimum, 2,500 acres of agricultural land
(that was due to be completed one-month later). In summary, despite MDA's efforts to
assist her, Plaintiff still was not fulfilling the legitimate expectations of her job, including
performing the most essential duty of her job—that being, developing conservation plans
meeting the acreage goals set in her Position Description.  (Ex. 8, Mister Aff., ¶ 12.) (Ex.
1, Petrauskas Aff., ¶ 14.)  (Ex. 8, Mister Aff., ¶ 12.)

---

[11] Between March 8, 2016 and April 18, 2016, Plaintiff again was absent from work —
again taking leave pursuant to the Family Medical Leave Act.  Plaintiff again did not inform
her supervisors that she had a disability and, in particular, had depression.  (Ex. 1,
Petrauskas Aff, ¶ 13; and Ex.8, Mister Aff., ¶ 11.)

## ARGUMENT

## I.

## PLAINTIFF FAILED TO STATE A CLAIM FOR EMPLOYMENT DISCRIMINATION.

### A. STANDARD OF REVIEW

To state a claim for relief under Federal Rule of Civil Procedure 8(a)(2), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted). It must allege sufficient facts "to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable of the misconduct alleged." *Id*. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Inquiry into whether a complaint states on its face a plausible claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Giacomelli* at 193 (quoting *Iqbal* at 679). If "the

14

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (alteration in original).

On a Rule 12(b)(6) motion, a court generally "considers not only the complaint, but also any exhibits actually attached or referenced to as part of the complaint." *Mitchell v. Henderson,* 128 F. Supp. 2d 298, 301 (D. Md. 2001). *See* Fed. R. Civ. P. 10 (c) (copies of written instruments that are "exhibit[s] to a pleading . . . [are] a part of the pleading for all purposes"). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached. . . , the exhibit prevails." *Fayetteville Inv'rs. v. Commercial Builders, Inc.,* 936 F.2d 1462, 1465 (4th Cir. 1991). "[W]hen a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [without converting the motion into one for summary judgment if the document] . . . was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *American Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F. 3d 609, 618 (4th Cir. 1999)).

### B. Discrimination Claims under Title I of the ADA[12]

Although Plaintiff has not set forth her claims in separate counts, it appears that she is alleging that MDA discriminated against her under Title I of the ADA for (1) failing to hire her; (2) terminating her employment; and (3) creating a hostile work environment.[13]

---

[12]  Plaintiff may only proceed under Title I of the ADA as Title II does not provide a vehicle for public employment discrimination claims. *Reyazuddin v. Montgomery County, Maryland***,** 789 F.3d 407, 421 (4th Cir. 2015).

[13]  No facts have been plead suggesting this is an ADA failure to accommodate claim.

As discussed in Section I.C. below, it also appears that Plaintiff also is alleging that MDA retaliated against her.  Plaintiff, however, has not presented factual allegations adequate to present a plausible claim for any of these separate causes of action.[14]

      1.  <u>Failure to Hire Claim</u>.

To establish a *prima facie* failure-to-hire claim under the ADA, a plaintiff must show that (1) she had a disability; (2) she was qualified for the position; and (3) that her disability was the reason for the employer's refusal to hire her.  *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 235–36 (4th Cir. 2016) (holding that to establish a disability claim, the ADA's text calls for the employee to meet the "but-for" causation standard—not the less stringent "motivating factor" causation standard); *compare Baird v. Rose,* 192 F.3d 462, 466, 470 (4th Cir.1999).

For purposes of this motion only, MDA assumes that Plaintiff has a qualifying disability under the ADA—based on her allegation that she has "severe depression—and, for this reason, has established the first element.  For the following reasons, however, Plaintiff has not presented adequate factual allegations plausibly demonstrating the second and third elements necessary to establish a *prima facie* failure to hire claim under the ADA.[15]

---

[14]  MDA recognizes that Plaintiff is a self-represented litigant and, for this reason, her Complaint is to be liberally construed.  *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP,* 997 F.Supp.2d 310, 314 (D. Md. 2014).

[15] While Plaintiff is alleging that MDA failed to hire her, she already was "hired" by MDA. *See* Charge of Discrimination attached to her Complaint (ECF, Document 1-2, page 2),

First, Plaintiff has not provided any information indicating that she was qualified for this particular position other than alleging that, at some time in the past, she had previously held it. (ECF 1, Complaint, III.E, ¶ 3.) Indeed, Plaintiff has not specifically identified the particular position for which she was not hired.

Second, Plaintiff has failed to plead any facts that could plausibly lead to the inference that her disability was the reason for MDA's refusal to hire her for this position. Plaintiff's bare bones allegation that she was discriminated against due to her disability is insufficient.  Without more particularity, Plaintiff is simply reciting the elements of the cause of action. *See Rubino v. New Acton Mobile Indus., LLC,* 44 F.Supp.3d 616, 623 (D.Md.2014).  "Such threadbare allegations do not satisfy *Iqbal* and *Twombly,* particularly where [Plaintiff] bears the burden to demonstrate each element." *Young v. Giant Food Stores, LLC,*108 F. Supp. 3d 301, 318 (D. Md. 2015).  *See also Tyndall v. Nat'l. Educ. Ctrs. Of Cal.,* 31 F.3d 209, 213 (4th Cir. 1994).

   2.  <u>Wrongful Discharge Claim</u>.

"To establish a *prima facie* wrongful discharge claim under the ADA, a plaintiff must show that: (1) she was a qualified individual with a disability; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination." *Rohan v. Networks Presentations LLC,* 375 F.3d 266, 273 n. 9 (4th

where Plaintiff states that she "was last employed [with MDA] as an Agricultural Resource Conservation Specialist." Notably, Plaintiff did not allege that MDA failed to promote her.

Cir.2004) (internal quotation marks omitted).  *See also Young,* 108 F.Supp.3d at 318. Plaintiff, in this case, has not presented adequate factual allegations plausibly demonstrating the first, third, and fourth elements of this cause of action.

First, even assuming that Plaintiff has a qualifying disability (which, as noted above, MDA accepts for the purposes of this motion only), she has not presented adequate factual allegations plausibly demonstrating that she is a qualified individual with a disability.  For example, Plaintiff has not provided any meaningful information about the essential functions of her job—that is, "'those that bear more than a marginal relationship to the job at issue.'" *Shin v. Univ. of Md. Med. Sys. Corp.,* 369 Fed.Appx. 472, 480 (4th Cir.2010) (quoting *Tyndall,* 31 F.3d at 213); *see also Young*, 108 F. Supp. 3d at 318.  Indeed, Plaintiff has done little more than identify the position she held at MDA as an Agricultural Resource Conservation Specialist. *See* Charge of Discrimination attached to her Complaint (ECF, Document 1-2, page 2).  "Without even a cursory description of what kind of work she does, Plaintiff has simply recited the elements of the cause of action." *Rubino,* 44 at 623. As noted above, "[s]uch threadbare allegations do not satisfy *Iqbal* and *Twombly,* particularly where [Plaintiff] bears the burden to demonstrate each element." *Young*,108 F. Supp. 3d at 318.  *See also Tyndall,* 31 F.3d at 213.

Second, Plaintiff has failed to plead any facts that could plausibly lead to the inference that she met MDA's legitimate expectations at the time it terminated her employment. This element is distinct from the inquiry into the "essential functions of a job."  *See Ennis v. National Association of Business and Educational Radio, Inc.,* 53 F.3d 55, 61–62 (4th Cir.1995).  It concerns "the perception of the decision maker. . . , not the

self-assessment of the plaintiff." *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 960–1 (4th Cir.1996); *King v. Rumsfeld,* 328 F.3d 145, 149 (4th Cir.2003)(quoting *Evans* ); *DeJarnette v. Corning, Inc.,* 133 F.3d 293, 299 (4th Cir.1998).  Plaintiff's allegation under Section V of the Complaint, "Relief," that, in previous years, she "exceeded standards" when her performance was evaluated is insufficient.  (ECF 1.)  Very simply, it does not speak to her performance at the time her employment was terminated.  *See Young*,108 F. Supp. 3d at 318; and *Rubino,* 44 F.Supp.3d at 623–24 (dismissing case where plaintiff "makes no allegation whatsoever about his job performance or whether [his employer] considered him a satisfactory employee").

Finally, Plaintiff has failed to plead any facts that could plausibly demonstrate that the circumstances of her discharge raise a reasonable inference of unlawful discrimination. Plaintiff's lone allegation that she has been discriminated against due to her disability is insufficient.  As noted above, it is nothing more than a recital of one of the elements of this cause of action, lacking the requisite particularity to plausibly demonstrate it.

3.  Hostile Work Environment Claim.

To establish a *prima facie* hostile work environment claim under the ADA, a plaintiff must show that: "(1) [she] is a qualified individual with a disability; (2) [she] was subjected to unwelcome harassment; (3) the harassment was based on [her] disability; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." *Fox v. GMC*, 247 F.3d 169, 176-77 (4th Cir. 2001).  *See also Brady v. Board of Education*

19

*of Prince George's County*, 222 F.Supp.3d 459, 474 (D. Md. 2016) (the ADA's cause of action for hostile work environment is modeled after the Title VII of the Civil Rights Act of 1964 cause of action).  Plaintiff has not presented adequate factual allegations plausibly demonstrating any of the requisite elements to this claim.

First, for the reasons noted in Section I.B.2 of the Argument above, Plaintiff has not presented adequate factual allegations plausibly demonstrating that she is a qualified individual with a disability.   Second, Plaintiff has not presented adequate factual allegations plausibly demonstrating that she was the subject of unwelcome harassment—having simply alleged that "[f]alse acquisitions and harassment by Supervisor, staff . . . caused severe depression."  (ECF 1, Complaint, III.E, ¶ 2.) She has not identified who did what, and when.  The only examples of alleged harassment that Plaintiff provides appear in an attachment to the Intake Questionnaire that she submitted to the EEOC (ECF 1-2, pages 6-9.), and they are unrelated to her disability.  Moreover, they suggest that the alleged harassment that she claims was based on sex—and not her disability.[16]  They include the following: (a) A male co-worker made untrue statements regarding how she conducted herself at a training meeting; (b) This same individual, who she is to utilize for resources, will not greet her; (c) Other male co-workers keep the door to their shared office closed, and she has to knock to enter; (d) When these same people are in this room, they are not closely monitored, and can play games, but she is closely monitored.  *Id*.

---

[16] As explained in note 18, this Court would not have jurisdiction over any claim Plaintiff may have against MDA based on sex discrimination (a claim that MDA also denies).

Third, even assuming that Plaintiff has demonstrated that she was subjected to unwelcome harassment, she has not presented adequate factual allegations plausibly demonstrating that such harassment was based on her disability.  Indeed, Plaintiff does even not claim that the alleged harassment is due to "severe depression."  Rather, as previously noted, she alleges that the harassment "caused" her severe depression.  This is a critical distinction, and is buttressed by the allegations contained in the attachment to her Intake Questionnaire which, as noted above, are unrelated to her disability.

Fourth, Plaintiff has not presented adequate factual allegations plausibly demonstrating that the harassment was sufficiently severe or pervasive to alter the conditions of employment.  While Plaintiff claims that the work environment "prohibited work performance," she fails to state what was so severe or pervasive to cause this.  Again, the only examples of alleged harassment appear in an attachment to the Intake Questionnaire she submitted to the EEOC and concern matters wholly unrelated to her disability.  Finally, Plaintiff has not presented adequate factual allegations plausibly demonstrating that some factual basis exists to impute liability for disability harassment to MDA.  In the four paragraphs under Section III.E of her Complaint, where she was asked to cite the facts of her case, Plaintiff has not alleged any facts demonstrating that MDA had actual or constructive knowledge of any harassment due to her disability, much less after acquiring such knowledge, MDA failed to take effective action to stop it.  *See E.E.O.C. v. Xerxes Corp.*, 639 F.3d 658, 669 (4th Cir. 2011) (noting that the court's cases have long held that before liability may be imposed under this element, the employer must have

acquired actual or constructive knowledge of the allegedly harassing conduct and, after doing so, not taken prompt and adequate remedial action to correct it).

## C. Retaliation Claim

To plead a retaliation claim, Plaintiff must present factual allegations sufficient to present a plausible claim that: (1) She engaged in protected activity; (2) An adverse employment action was taken against her; and (3) There was a causal link between the protected activity and the adverse employment action.  *Reynolds v. American Nat. Red Cross,*  701 F.3d, 143, 154 (4th Cir. 2012); *Laughlin v. Metro. Washington Airports Auth.*, 149 F3d 253, 258 (4th Cir. 1998).  Plaintiff has not presented adequate factual allegations plausibly demonstrating the first and third elements of this cause of action.

First, Plaintiff has not presented factual allegations adequate to present a plausible claim that MDA retaliated against her for engaging in a protected activity.  Plaintiff's claim appears to be based on her reported complaint to MDA's Fair Practice Officer, James Wallace, about finding "medical documentation left in common area." (ECF 1.)  Such activity on Plaintiff's part, however, is not something that is covered by the ADA.  "The ADA's retaliation provision only prohibits retaliation against a person because the person 'opposed any act or practice made unlawful *by this chapter'* or 'made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing *under this chapter.'* 42 U.S.C. § 12203(a) (emphases added)."  *Reynolds,* 701 F.3d at 154. Very simply, Plaintiff does not explain why her reported claim would be considered protected activity.  *See Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 191 (4th Cir.2010), *aff'd.*, 566 U.S. 30 (2012).

Moreover, even assuming that Plaintiff's reported complaint about finding medical documentation left in a common area is "protected activity," Plaintiff has not presented factual allegations sufficient to present a plausible claim that there was a causal link between the protected activity and the adverse employment action—particularly with respect to MDA's action to terminate her employment, given the temporal distance between these two events.  In the context of an ADA discrimination case, this means that a Plaintiff must prove "but-for" causation.  *Brady*, 222 F.Supp. at 474.

II.

**PLAINTIFF'S HIPAA CLAIM SHOULD BE DISMISSED
FOR LACK OF SUBJECT MATTER JURISDICITION.**

**A.  STANDARD OF REVIEW**

A Rule 12(b)(1) motion "raises the fundamental question as to whether . . . jurisdiction [exists] to adjudicate the claims presented." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Jordan v. Maryland Transit Administration*, MJG-15-3253, WL 445227 at *1 (D. Md. Feb. 2. 2017).  In such cases, Plaintiff has the burden of proving that it exists.  *Id.*  "[I]f the material jurisdictional facts are not in dispute[,] . . . the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir.1999)(quoting *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d at 768).

In raising this motion, a defendant may assert either (1) a facial challenge that the allegations as stated in the complaint are not sufficient to establish subject matter jurisdiction; or (2) a factual challenge that the allegations establishing jurisdiction are not

true. *Belyakov v. Medical Science & Computing*, 86 F. Supp. 3rd 430, 439-40 (D. Md. 2015), citing *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir.2009).  In the instant case, MDA is making a facial challenge that HIPAA affords Plaintiff a private right of action for MDA's alleged violation of this law.

### B. PLAINTIFF HAS NO PRIVATE RIGHT OF ACTION FOR MDA'S ALLEGED VIOLATION OF HIPAA.

In her Complaint, Plaintiff asserts that she is bringing this action pursuant to HIPAA.  She claims that the discriminatory conduct on which her complaint is based includes "HIPA (sic) Laws," alleging that "medical documentation [was] left in common area," and seeks punitive damages.  (ECF 1.)  HIPAA, however, "does not create a private right of action."   *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010).  *See also Acara v. Banks,* 470 F.3d 569, 572 (5th Cir.2006) (holding that "there is no private cause of action under HIPAA and therefore no federal subject matter jurisdiction over [Plaintiff's] asserted claims" against a physician for disclosing her medical information during a deposition without her consent); and *University of Colorado Hosp. v. Denver Pub. Co.*, 340 F. Supp. 2d 1142 (D. Col. 2004) (finding no evidence that Congress intended to create a right of action to enjoin a publisher from publishing a report contained in a peer review proceeding that was obtained from an unknown sources).  Without jurisdiction, this Court may not adjudicate this claim. [17]

---

[17] If an individual believes that a HIPAA-covered entity violated that person's health information privacy rights, that individual may file a complaint with the Department of Health and Human Services' Office for Civil Rights, which may impose financial penalties for violations of this law. HIPAA of 1996, Pub. L. No. 104-91, 110 Stat. 1936 (1996).

# III.

## MDA IS ENTITLED TO SUMMARY JUDGMENT.

### A. STANDARD OF REVIEW

A motion for summary judgment under Rule 56 is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.,* 452 F.3d 299, 302 (4th Cir.2006). "A material fact is one that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183 (4th Cir.2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)) (internal quotation marks omitted).  For a genuine dispute of material fact to exist, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 249.  To defeat a properly supported motion for summary judgment, a party "may not rest upon the mere allegations or denials of [its] pleadings." *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir.2003), *cert. denied,* 541 U.S. 1042 (2004).  Rather, the opposing party must come forward with affidavits or similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); and *Bouchat,* 346 F.3d at 525. If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed.R.Civ.P. 56(e)(2).

In reviewing a motion for summary judgment, the Court must view facts and reasonable inferences in the light most favorable to the nonmoving party. *Anderson,* 477

U.S. at 255.  A mere "scintilla" of evidence in support of the nonmoving party's case, however, is insufficient to preclude a grant of summary judgment. *Anderson,* 477 U.S. at 252.  Moreover, the Court may rely only on facts supported in the record, not simply assertions in the pleadings, to fulfill its "affirmative obligation ... to prevent 'factually unsupported claims or defenses' from proceeding to trial." *See Drewitt v. Pratt,* 999 F2d. 774, 778-9 (4th Cir. 1993) (citing *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987).

### B.  Plaintiff cannot establish an ADA failure to hire claim.

Even assuming that Plaintiff can demonstrate that (1) she had a disability and (2) she was qualified for the specific position she sought (two of the elements necessary to prove this claim), the undisputed facts make it impossible for Plaintiff to show that her disability was the "but for" reason for MDA's refusal to hire her for this position (the final element of this cause of action).  *See Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 235–36 (4th Cir. 2016) (holding that to establish a disability claim, the ADA's text calls for the employee to meet the "but-for" causation standard—not the less stringent "motivating factor" causation standard).

Absent direct evidence of discrimination (and Plaintiff has alleged no facts demonstrating this), Plaintiff's failure to hire claim must be evaluated under the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  *See Heiko v. Colombo Savings Bank, F.S.B.,* 434 F.3d 249, 258 (4th Cir.2006)  (noting that a failure to hire claim is properly analyzed under the *McDonnell Douglass* framework and its progeny when the employer disclaims any suggestion that its decision was founded on plaintiff's

26

disability).  Under this framework, the plaintiff has "the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence." *Bennett v. Kaiser Permanente*, 931 F.Supp.2d 697, 713 (4th Cir. 2013) (quoting *Ennis v. National Ass'n of Business and Educational Radio, Inc.,* 53 F.3d 55, 58 (1995)). "If the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory explanation which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* "If the defendant meets this burden of production, the presumption created by the *prima facie* case 'drops out of the picture,' and the plaintiff bears the ultimate burden of proving that she has been the victim of intentional discrimination." *Enis*, at 58.

In this case, MDA has articulated a legitimate, nondiscriminatory explanation for not hiring Plaintiff for the ARCS III positon with MDA's Water Quality Cost Share Program.  Following the process set forth in State law (Md. Code Ann., State Pers. & Pens. § 7-201 *et seq*.), MDA selected an applicant deemed more qualified to fill this position.  In February 2016, Plaintiff, and four other individuals, interviewed for an ARCS III position with MDA's Water Quality Cost-Share Program. The interviews were conducted by a three-member panel comprised of MDA employees.  None of the members of this panel were aware that Plaintiff had a disability and, in particular, had depression, or regarded her as having a disability or being depressed.  After interviewing the applicants, the panel rated each one, ranking three of them higher than Plaintiff, and recommending Saiping Tso, an Asian female, to be selected for this position.  *See* Affidavits of three-member panel: (a)

Ex.3, Astle Aff., ¶ 4, 8, 11; (b) Ex. 4, Marose Aff., ¶ 4, 8, 11; and (c) Ex. 5, Agbede Aff., ¶ 4,8 11.

The panel's recommendation for selecting Saiping Tso over other candidates was based on relative employee qualifications, noting that, among her qualifications, Saiping Tso: (1) "has a familiarity with agricultural cost-share programs (USDA/NRCS)"; (2) "has a general understanding of MDA's agricultural cost-share program"; (3) "has worked with conservation programs to ensure compliance"; (4) has experience developing nutrient management plans associated with conservation plan practices; and (5) "possesses the ability to develop reports, edit manuals, create fact sheets, newsletters, *etc*." (Ex. 2, Conteh Aff., Att. E, Interview Evaluation Sheet for Saiping Tso.); *compare* Plaintiff's Interview Evaluation Sheet. *Id*., Att. F.  "Job performance and relative employee qualifications are widely recognized as valid, nondiscriminatory bases for any adverse employment decision." *Evans v. Tech. Applications & Serv. Co.,* 80 F.3d 954, 960 (4th Cir.1996).  See also *Figueroa v. Geithner*, 711 F.Supp.2d 562 (D. Maryland 2010).

The panel's work was reviewed and approved by: (1) Momoh Conteh, Administrator, MDA's Human Resources Section; (2) James Wallace, MDA's Fair Practice Officer; and (3) Assistant Secretary Hans Schmidt, the Appointing Authority for MDA's Office of Resource Conservation and its Water Quality Cost-Share Program.  (Ex. 2, Conteh Aff., Atts. E and F.)

Shortly thereafter, Mr. Schmidt accepted the panel's determination, and hired Saiping Tso.  (Ex.6, Schmidt Affidavit, ¶ 6.)  When Mr. Schmidt made this decision, neither he, nor anyone else in Plaintiff's chain-of-command, was aware that Plaintiff had a

disability and, in particular, had depression; nor did they regard her as having a disability or being depressed.  (Ex.6, Schmidt Affidavit, ¶ 6.) (Ex. 1, Petrauskas Aff., ¶ 10.) (Ex. 8, Mister Aff., ¶ 7.)  As such, Mr. Schmidt did not have actual knowledge or constructive knowledge of Plaintiff's disability.  For this reason, MDA could not, and did not, take this employment action on the basis of Plaintiff's disability.

### C.  Plaintiff cannot establish an ADA wrongful discharge claim.

"To survive summary judgment on a wrongful-discharge claim under the Americans with Disabilities Act, Plaintiff is 'required to produce evidence sufficient to demonstrate that (1)[s]he 'was a qualified individual with a disability;' (2) [s]he 'was discharged;' (3) [s]he 'was fulfilling h[er] employer's legitimate expectations at the time of discharge;' and (4) 'the circumstances of h[er] discharge raise a reasonable inference of unlawful discrimination.'" *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (quoting *Rohan*, 375 F.3d at 273 n. 9 (4th Cir. 2004) (internal quotation marks omitted)). "Evidence of all four of these elements is necessary to survive summary judgment." *Id. See also Saah v. Thumel*, RDB-15-2425, WL 491221 at *6 (D. Md. Feb. 7, 2017). Excepting the second prong, Plaintiff has not produced evidence sufficient to demonstrate a wrongful-discharge claim under the Americans with Disabilities Act.

First, Plaintiff is not a qualified individual with a disability (that being: "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds"). *See* 42 U.S.C. § 12111(8) (2006).   Second, Plaintiff was not fulfilling her employer's legitimate

expectations at the time of her discharge.  This element, distinct from the inquiry into the "essential functions of a job," concerns "the perception of the decision maker. . . , not the self-assessment of the plaintiff." *Evans,* 80 F.3d at 960–1.  When MDA terminated Plaintiff's employment for misconduct in May 2016, Plaintiff not only was failing to meet the most essential function of her job (that being: Developing conservation plans for farm operations covering a minimum of 2,500 acres annually) but also the goals set forth in her PIP—which MDA devised to assist Plaintiff meet the goals of her Position Description. (Ex. 1, Petrauskas Aff., ¶ 14.) (Ex. 8, Mister Aff., ¶ 12.)

Finally, the circumstances of Plaintiff's discharge do not raise a reasonable inference of unlawful discrimination.  Here, the question is whether a reasonable juror could conclude that Plaintiff could prove that Defendant's nondiscriminatory reasons were pretexts for discrimination.  *See Bennett*, 931 F. Supp. at 697, 714-5.  For the following reasons, no reasonable juror could so conclude.  Following the process set forth in State law (Md. Code Ann., State Pers. & Pens. § 11-106), MDA terminated Plaintiff's employment based on her misconduct. In May 2016, MDA terminated Plaintiff's employment for: (1) Using leave contrary to law or policy; and (2) Failing to obey a lawful order given by a supervisor. (Ex. 6, Schmidt Aff., ¶ 7.) (Ex. 2, Conte Aff., Att. G, MDA's Notice of Termination to Plaintiff.)  In taking this action, MDA was employing progressive discipline.  Nine months earlier, in August 2015, MDA suspended Plaintiff without pay for similar misconduct.  (Ex. 2, Conteh Aff., Att. D, MDA's Disciplinary Action of Plaintiff.)

As required under State law, Mr. Schmidt's action terminating Plaintiff's employment was approved by the Secretary of Agriculture, Joseph Bartenfelder. (Ex. 7,

Bartenfelder Aff., ¶ 6.)  Plaintiff appealed MDA's action to terminate her employment to OAH which, following a contested case hearing in this matter, concluded as a matter of law that MDA lawfully terminated Plaintiff's employment. (Ex. 2, Conteh Aff., Att. I, OAH Decision.)  Plaintiff did not appeal this decision.

When Mr. Schmidt made this decision and Mr. Bartenfelder approved it, neither one was aware that Plaintiff had a disability and, in particular, had depression; nor did they regard her as having a disability or being depressed. (Ex.6, Schmidt Affidavit, ¶ 6,) (Ex. 7, Bartenfelder Aff., ¶ 7.) Likewise, no one else in Plaintiff's chain-of-command was aware that Plaintiff had a disability and, in particular, had depression; nor did they regard her as having a disability or being depressed.  (Ex. 1, Petrauskas Aff., ¶ 10.) (Ex. 8, Mister Aff., ¶ 7.) (Ex. 9, Miller Aff., ¶ 8.)  As such, neither Mr. Schmidt nor Mr. Bartenfelder had actual or constructive knowledge of her disability.  For this reason, MDA could not, and did not, take this employment action on the basis of Plaintiff's disability.

### D.  Plaintiff cannot establish an ADA hostile work environment claim.

Even assuming that Plaintiff can demonstrate that she was subjected to unwelcome harassment, Plaintiff cannot establish that (1) she is a qualified individual with a disability, (2) the alleged harassment was based on her disability, (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment, or (4) some factual basis exists to impute liability for the harassment to MDA (the remaining four elements of this claim).

First, for the reasons noted in III.B of the Argument above, Plaintiff is not a qualified individual with a disability as she is unable to perform the essential functions of her job, with or without reasonable accommodation.  Second, Plaintiff has not demonstrated that

31

the alleged harassment was based on her disability.  Indeed, as noted in Section I.B.3 of

the Argument above, Plaintiff does not even claim that the alleged harassment is due to her

"severe depression."    Rather, Plaintiff alleges that the harassment "caused" her severe

depression—a critical distinction buttressed by the allegations contained in the attachment

to her Intake Questionnaire which suggest that the alleged difficulties she was experiencing

with her co-workers were unrelated to her disability. (ECF 1-2, pages 6-9.)  Specifically,

they suggest that the alleged harassment was based on Plaintiff' sex (a claim that MDA

also denies)—and not her disability.[18]  They include the following: (a) A male co-worker

made untrue statements regarding how she conducted herself at a training meeting; (b) This

same individual, who she is to utilize for resources, will not greet her; (c) Other male co-

workers keep the door to their shared office closed, and she has to knock to enter; (d) When

---

[18] Assuming Plaintiff is now attempting to claim that the alleged hostile work environment
was based on sex (that being, a claim brought under Title VII of the Civil Rights Act of
1964), Plaintiff has failed to exhaust her administrative remedies and, for this reason, this
Court does not have jurisdiction over it. To exhaust administrative remedies under Title
VII, a plaintiff must file a charge with EEOC, "the contents. . . [of which] determine the
scope of the plaintiff's right to file a federal lawsuit." *Bennett*, 931 F.Supp.2d at 704.  As
a rule, "[o]nly those discrimination claims stated in the initial charge, those reasonably
related to the original complaint, and those developed by a reasonable investigation of the
original complaint may be maintained in a subsequent [employment discrimination]
lawsuit." *Id*., quoting *Evans v. Techs. Apps. & Serv. Co.,* 80 F.3d 954, 963 (4th Cir.1996).
The contents of Plaintiff's Charge of Discrimination (ECF 1-2, p.2.) make no claim that
Plaintiff was subjected to a hostile work environment based on sex or that MDA otherwise
discriminated against her on the basis of her sex.  As such, any such claim would be beyond
the scope of Plaintiff's right to file a federal lawsuit. *See also Belyakov,*  86 F. Supp. 3rd at
439, citing *Jones v. Calvert Grp., Ltd.,* 551 F.3d 297, 301 (4th Cir.2009) (holding that the
failure to raise a claim in an EEOC charge, and thus to exhaust administrative remedies,
implicates subject matter jurisdiction).

these same people are in this room, they are not closely monitored, and can play games, but she is closely monitored. *Id*.

Because such conduct is unrelated to Plaintiff's disability, it may not be considered in evaluating Plaintiff's disability discrimination claim. *See Chadha v. Northrop Grumman Systems Corp.*, RDB-16-1087, WL 3226861 at *4 (D. Md. July 31, 2017) (holding that the Court may not consider certain comments co-workers made about plaintiff in evaluating his claim for discrimination based on race, age, or disability when he presented no evidence that these comments were based on any race, age, or disability discrimination). This would include the Court's evaluation regarding whether the alleged harassment was sufficiently severe or pervasive to alter the conditions of her employment and whether some factual basis exists to impute liability for the harassment to MDA.

### E. Plaintiff cannot establish a retaliation claim.

To establish a *prima facie* case of retaliation, a plaintiff must prove: (1) that the plaintiff engaged in a protected activity; (2) that the employer took an adverse employment action against the plaintiff; and (3) that there was a causal link between the two events. *Balas v. Huntington Ingalls Indus.,* 711 F.3d 401, 410 (4th Cir. 2013). Plaintiff cannot do so because she cannot produce sufficient proof demonstrating the first and third elements of this cause of action.

First, for the reasons noted in Section I.C. of the Argument above, Plaintiff's reported complaint about finding "medical documentation left in common area" (ECF 1.) is not a protected activity covered by the ADA. As noted, "[t]he ADA's retaliation provision only prohibits retaliation against a person because the person 'opposed any act

or practice made unlawful *by this chapter'* or 'made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing *under this chapter.'* 42 U.S.C. § 12203(a) (emphases added)." *Reynolds,* 701 F.3d at 154.

Second, even assuming that Plaintiff engaged in a protected activity, Plaintiff cannot demonstrate that there was a causal connection between the protected activity and MDA's decision to: (1) hire another individual for the ARCS III position; or (2) terminate Plaintiff's employment.  "To establish a causal connection between a protected activity and an adverse action, a plaintiff must prove that ... the employer knew the employee engaged in a protected activity." *Gibson v. Marjack Co.*, 718 F. Supp. 2d 649, 655 (D. Md. 2010) (citing *Causey v. Balog*, 162 F.3d 795, 803–04 (4th Cir. 1998) (stating that "[k]nowledge of a charge is essential to a retaliation claim"); *Dowe v. Total Action against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (explaining that "[s]ince, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.")). *Saah v. Thumel*, RDB-15-2425, WL 491221 at *12 (D. Md. Feb. 7, 2017).  Plaintiff cannot demonstrate this because when Mr. Schmidt took the two adverse employment actions referenced above, neither he nor anyone else in Plaintiff's chain-of-command was aware of Plaintiff's reported complaint to Mr. Wallace about finding "medical documentation left in common area."  (ECF 1, Complaint, Section III.E, ¶ 1.)  (Ex.6, Schmidt Affidavit, ¶ 6.) (Ex. 1, Petrauskas Aff., ¶ 10.) (Ex. 8, Mister Aff., ¶ 7.)  As such, Mr. Schmidt did not have actual or constructive knowledge of

Plaintiff's reported complaint.  For this reason, MDA could not, and did not, take these employment actions on the basis of this activity.

Moreover, even if her reported complaint about finding medical documentation is a protected activity and Mr. Schmidt knew it when he took the above-referenced actions, such knowledge alone is insufficient to establish causation for the purposes of retaliation. *See Gibson v. Old Town Trolley Tours of Wash., D.C.,* 160 F.3d 177, 182 (4th Cir.1998). As previously noted, in the context of an ADA discrimination case, this means that a Plaintiff must prove "but-for" causation (*Brady*, 222 F.Supp.3d at 474); and, in this case, Plaintiff cannot prove this. As MDA demonstrated earlier, for each adverse action referenced above, MDA had a legitimate, non-discriminatory reason for taking it.

## CONCLUSION

For the forgoing reasons, MDA requests that its motion be granted.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

/s/ Thomas F. Filbert
_____
Thomas F. Filbert
Assistant Attorney General
Federal Bar No. 29502
Office of the Attorney General
50 Harry S. Truman Parkway
Annapolis, MD  21401
Thomas.Filbert@Maryland.gov
410-841-5883
Attorneys for Defendant MDA

35

## INDEX OF EXHIBITS

PETRAUSKAS AFFIDAVIT……………………………………………........ EXHIBIT 1

CONTEH AFFIDAVIT……………………………………………………..….. EXHIBIT 2

    PLAINTIFF'S ARCS II POSITION DESCRIPTION……..…………………ATTACHMENT A

    PLAINTIFF'S EVALUATION FOR THE ONE-YEAR
     PERIOD ENDING JUNE 30, 2015………………………………….......ATTACHMENT B

    PLAINTIFF'S PIP (JULY 1, 2015 – DECEMBER 31, 2015)………………..ATTACHMENT C

    MDA'S AUGUST 2015 DISCIPLINARY
     ACTION OF PLAINTIFF……………………………………………ATTACHMENT D

    INTERVIEW EVALUATION SHEET FOR SAIPING TSO……………….....ATTACHMENT E

    INTERVIEW EVALUATION SHEET FOR PLAINTIFF……………………...ATTACHMENT F

    MDA'S DISCIPLINARY ACTION, TERMINATING
     PLAINTIFF'S EMPLOYMENT………………………………………..ATTACHMENT G

    MAY 12, 2016, MEETING NOTICE FROM PETRAUSKAS
     TO MYERS………………………………………………………...ATTACHMENT H

    OAH DECISION…………………………………………………ATTACHMENT I

    JANUARY 8, 2016, DOCTOR NOTE RETURNING
     MYERS BACK TO WORK…………………………………….................ATTACHMENT J

ASTLE AFFIDAVIT……………………………………………………………EXHIBIT 3

MAROSE AFFIDAVIT…………………………………………………….......EXHIBIT 4

AGBEDE AFFIDAVIT…………………………………………….....................EXHIBIT 5

SCHMIDT AFFIDAVIT……………………………………………………..EXHIBIT 6

BARTENFELDER AFFIDAVIT…………………………………………….......EXHIBIT 7

MISTER AFFIDAVIT……………………………………………………….EXHIBIT 8

    JANUARY 7, 2016 EMAIL FROM KAREN MILLER
     TO DAVID MISTER REGARDING MEETING…………………………..ATTACHMENT A

MILLER AFFIDAVIT……………………………………………………........EXHIBIT 9

JANUARY 7, 2016 EMAIL FROM KAREN MILLER
TO DAVID MISTER REGARDING MEETING…………………………ATTACHMENT A

BAGAMSAH AFFIDAVIT…………………………………………………….......EXHIBIT 10