**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| KATHY MYERS | * | |
| | * | |
| v. | * | |
| | * | |
| MARYLAND DEPARTMENT OF AGRICULTURE | * | Civil No. ELH-17-2239 |
| | * | |
| | * | |

********

## MEMORANDUM OPINION

The self-represented plaintiff, Kathy Myers, filed an employment discrimination lawsuit against her former employer, the Maryland Department of Agriculture ("MDA"), defendant. ECF 1. She appended several exhibits to her suit. *See* ECF 1-1; ECF 1-2. Myers alleges violations of Maryland State law; the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 300gg, 29 U.S.C. § 1181 *et seq.* and 42 U.S.C. § 1320 *et seq.*, and the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12101 *et seq.*[1]

Among other things, Myers claims that between July 2014 and her termination on May 25, 2016, she was subjected to a hostile work environment and discrimination, as well as retaliation for protected activity, based on the disability of "severe depression," which she contends was "job related." ECF 1 at 5, 6. She also complains that she suffered discrimination when MDA failed to select her in February 2016 for a "position vacancy" as a Soil Conservation Specialist III. ECF 1-2 at 2. And, she asserts that she was wrongfully discharged on May 26, 2017. Myers seeks compensatory and punitive damages. *Id.* at 7.

[1] Myers filed a motion for leave to proceed in forma pauperis. ECF 2. The Court granted that motion. ECF 3.

Now pending is defendant's motion to dismiss or, in the alternative, for summary judgment. ECF 8. It is supported by a comprehensive memorandum (ECF 8-1) (collectively, "Motion") and several exhibits. The memorandum recounts, in detail, the factual history pertinent to plaintiff's employment and her allegations in the suit.

Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Myers was informed of her right to respond to the Motion and that failure to respond could result in the dismissal of her case. ECF 9. Meyers did not respond.

No oral argument is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons set forth below, I shall construe the Motion as a motion to dismiss and grant the Motion.

## I. BACKGROUND[2]

This dispute concerns MDA's alleged employment discrimination against Myers based on Myers' disability of severe depression, a condition of which the MDA was allegedly aware. ECF 1 at 5.[3] Myers argues both that she was discriminated against because of her severe depression (ECF 1 at 5) and that the hostile work environment to which she was allegedly subjected caused her severe depression. *Id.* at 9.[4]

---

[2] Because plaintiff is self represented, I shall liberally construe her allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Although MDA includes a detailed factual summary, I need not recount these facts, because they are not pertinent to the disposition of the Motion.

[3] MDA asserts that "no one in MDA's chain-of-command was aware that Plaintiff had a disability. . . ." ECF 8-1 at 9. The dispute is not material to the disposition of the Motion.

[4] Among the exhibits that Myers included with her suit are two letters from a "Dr. Frederick Delboy," one dated November 24, 2015 (ECF 1-2 at 13) and the other dated March 4, 2016 (*id.* at 14), both addressed "To Whom It May Concern." Dr. Delboy is associated with Chestertown Family Medicine, but there is no indication as to his medical or mental health field. Indeed, it is unclear if he is a medical doctor by mere use of the abbreviation "Dr."

The letters state that, for the periods mentioned, plaintiff was unable to work "due to a chronic health condition that is job related . . . ." However, the letters do not reveal plaintiff's health condition.

Myers began her employment with the MDA in December 1998, and was employed by the MDA for 17 years, until she was terminated on May 26, 2016. ECF 1 at 7. Myers' most recent position at the MDA was as an Agricultural Resource Conservation Specialist ("ARCS") II, where she was assigned to the Kent Soil Conservation District. ECF 1-2 at 2; ECF 8-2, ¶¶ 4, 5, 16. Myers alleges that, during the course of her employment, she "always received exceeds standards, outstanding reviews." ECF 1 at 7.

Plaintiff maintains that she "changed positions within the department" in October 2013, and the "Supervisor & staff had issues with [her] & wanted [her] out." *Id.* Moreover, she asserts that she was subjected to "False acquisitions [sic] & harassment by Supervisor, staff that caused severe depression." *Id.* at 6. She also states that her Supervisor, Dave Mister, has tried to "ruin [her] career" at MDA. ECF 1-2 at 8. In addition, she recounts that "FMLA was taken for 12 weeks due to a chronic health condition that was job related." ECF 1 at 6. Based on plaintiff's exhibits, it appears that Myers was on leave from November 18, 2015 through January 5, 2016, and again from March 8, 2016 through April 19, 2016. ECF 1-2 at 8.

Further, Myers alleges that she was subjected to a HIPAA violation based on a breach of confidentiality concerning her medical records. ECF 1 at 6; *see* ECF 1-2 at 6. She claims that in January 2016, she discovered that her medical documentation had been left unattended on a copier in a common area. ECF 1-2 at 2, 6-7. Myers reported her discovery to a Maryland Equal Employment Opportunity ("EEO") officer, Jim Wallace. *Id.* at 2. The EEO did not take action, nor did it provide Myers with an explanation for its lack of action. *Id.*

Myers also asserts failure to hire under the ADA, which arises from her non-selection for a vacant position within the MDA. In February 2016, Myers applied to be a Soil Conservation Specialist III. ECF 1-2 at 2. The MDA selected a different candidate for this position without

explanation to Myers, even though Myers had previously held this position at the MDA. ECF 1-2 at 2, 9; ECF 1 at 7.[5]

In addition, Myers claims that she was wrongfully discharged from the MDA on May 26, 2016. The MDA explained to Myers that she was being terminated for "not following policy." ECF 1-2 at 2. Myers asserts, however, that she had consistently received "outstanding reviews" and "exceeds standards" during her employment. ECF 1 at 7.[6]

Myers filed a Charge of Discrimination with the Maryland Commission on Civil Rights on August 18, 2016. On May 10, 2017, the EEOC issued a Notice of Right to Sue letter. *Id.* at 6; ECF 1-2. This suit followed on August 8, 2017.

## II. STANDARDS OF REVIEW

The MDA moves to dismiss or, in the alternative, for summary judgment, asserting multiple grounds. It has recounted a detailed factual summary of plaintiff's employment, supported by exhibits. It argues lack of subject matter jurisdiction as to the hostile work environment claim, due to failure to exhaust; sovereign immunity; plaintiff's claims as to alleged discrimination are untimely as to matters that occurred before October 24, 2015, which was more than 300 days before Myers filed her charge of discrimination; and failure to state a claim. ECF 8-1. The standards of review for Fed. R. Civ. P. 12(b)(1) and Rule 12(b)(6) are relevant to resolving the Motion.

[5] The merits of this matter are discussed at length by MDA. *See* ECF 8-1 at 12-14, 33-36.

[6] Defendant contends that Myers was terminated for misconduct and unsatisfactory job performance. *See* ECF 8-1 at 14-20, 36-38; ECF 8-7, ¶ 7.

**A. Rule 12(b)(1)**

As noted, the MDA has moved to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, asserting that plaintiff's claims are barred by sovereign immunity, and also that her claim of hostile work environment is barred for failure to exhaust. ECF 8. Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

The Fourth Circuit recently affirmed that the defense of sovereign immunity is a jurisdictional bar, stating that "'sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'" *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, __ F.3d __, No. 17-1592, 2018 WL 1915162, at *6 (4th Cir. Apr. 24, 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). Moreover, the exhaustion requirements of Title VII and the ADA also function as a jurisdictional bar in federal court, where plaintiffs have failed to comply with it. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013). Failure to comply generally mandates dismissal of a suit. *Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citing *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985)).

A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th

Cir. 2013). "When a defendant makes a facial challenge to subject matter jurisdiction, 'the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.'" *Kerns*, 585 F.3d at 192 (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

A factual challenge, on the other hand, can also assert that facts outside the four corners of the complaint preclude the exercise of subject matter jurisdiction. *Durden*, 736 F.3d at 301. In considering a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009) ("Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may . . . resolve the jurisdictional facts in dispute by considering evidence . . . such as affidavits.") (Citation omitted).

**B. Rule 12(b)(6)**

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading

requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those

facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards,* 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman* ).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger,* 510 F.3d 442, 450 (4th Cir. 2007). However, a court may properly consider documents expressly incorporated by reference into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency,* 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *see Six v. Generations Federal Credit Union*, ___ F.3d ___, 2018 WL 2435430, at *2 (4th Cir. May 31, 2018); *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied,* 543 U.S. 979 (2004). Moreover, the documents attached to a motion to dismiss need not be supported by a declaration of authentication. *Six*, 2018 WL 2435430, at *2; *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d

449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also consider a document submitted by the movant, even if it was not attached to or expressly incorporated in a complaint. However, the document must be "integral to the complaint" and there can be "no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

**III. Discussion**

Myers alleges violations of three laws: (1) Maryland state law, specifically "COMAR .06.01.01.66," (2) HIPAA, and (3) the ADA. I shall construe the MDA's Motion as a motion to dismiss these claims. Therefore, the court need not consider matters outside of the pleadings.

**A. Maryland State Law Claim**

Myers alleges that the MDA violated "Maryland EEO, COMAR .06.01.01.66." To my knowledge, this regulation does not exist. *See* MD. CODE REGS. Therefore, the claim is subject to dismissal for failure to state a claim.

**B. HIPAA Claim**

Myers alleges that the MDA violated HIPAA by leaving her confidential medical records in a common area. ECF 1 at 6; ECF 1-2 at 2, 6-7. "It is well established, however, that no

private right of action exists under HIPAA." *Atkinson-Bush v. Balt. Wash. Med. Ctr., Inc.*, No. L-10-2350, 2011 WL 2216669, at *3 (D. Md. May 25, 2011), *aff'd*, 585 F. App'x 161 (4th Cir. 2014); *see also Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) ("HIPAA does not create a private right of action."); *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006). Thus, Myers' HIPAA claim is subject to dismissal.

**C. ADA Claims**

Myers appears to allege four claims under the ADA based on her disability of severe depression: (1) failure to hire, (2) wrongful discharge, (3) hostile work environment, and (4) retaliation. MDA contends that Myers' suit is barred by sovereign immunity. It also addresses the contentions on the merits. Because I conclude that the suit against MDA is barred under the Eleventh Amendment to the Constitution, I need not address MDA's other contentions.

The ADA was enacted in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." *Id.* § 12101(b)(2). The ADA contains five titles: Title I, Employment; Title II, Public Services; Title III Public Accommodations; Title IV, Telecommunications; and Title V, Miscellaneous Provisions.

Title I prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014) ("The ADA makes it unlawful for covered employers to 'discriminate against a qualified individual on the basis of disability.'"). A "qualified individual" is defined as

a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Unlawful discrimination under Title I of the ADA "can include the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee. . . .'" *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013) (quoting § 12112(b)(5)(A)). Moreover, "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability" may qualify as "discrimination against a qualified individual on the basis of disability." 42 U.S.C. § 12112(b)(5)(B).

Myers cannot bring her claims under Title II of the ADA. This is because "Title II unambiguously does not provide a vehicle for public employment discrimination claims." *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 421 (4th Cir. 2015). The other sections of the ADA also do not apply here. Therefore, I shall consider the claims under Title I of the ADA.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any Foreign State." The Eleventh Amendment did not create sovereign immunity. Rather, it preserved the sovereign immunity that the states enjoyed prior to the formation of the Union. *See Alden v. Maine*, 527 U.S. 706, 724 (1999); *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011). The preeminent purpose of state sovereign immunity is "to accord states the dignity that is consistent with their status as sovereign entities...." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).

Thus, states generally enjoy immunity from suits brought in federal court by their own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890); *see also Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."). In other words, under the Eleventh Amendment, a private individual is barred from bringing a suit against a state in federal court to recover damages, unless the state consents or there is an exception to sovereign immunity. *See Coleman v. Court of Appeals of Md.*, 556 U.S. 30, 35 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted); *Edelman v. Jordan*, 415 U.S. 651 (1974).

Of import here, absent waiver or a valid congressional abrogation of sovereign immunity, sovereign immunity also bars suit against an instrumentality of a state, sometimes referred to as an "arm of the state," including state agencies. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013); *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005).

The MDA is an entity or arm of the State of Maryland. Under MD. CODE (2016 Repl. Vol.), AGRIC. § 2-101, the Department of Agriculture is "a principal department of the State government." Moreover, AGRIC. § 8-306 provides that all established soil conservation districts in Maryland constitute "political subdivision[s] of the State, and…public bod[ies] corporate and politic, exercising public powers." Therefore, suit against the MDA is tantamount to a suit against the State of Maryland.

The Fourth Circuit has noted three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state. In *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012), the Court said, *id.* at 249 (internal quotations omitted):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) .... Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) .... Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.,* 535 U.S. 613, 618 (2002).

None of the exceptions is applicable here.

First, sovereign immunity has not been congressionally abrogated for claims under Title 1 of the ADA. *See Garrett*, 531 U.S. at 374; *McCray*, 741 F.3d at 483. In *Garrett*, 531 U.S. at 360, the Supreme Court concluded that suits by individuals against a State for money damages under the ADA are barred by the Eleventh Amendment.

To be sure, a state may waive its Eleventh Amendment sovereign immunity and permit suit in federal court, *see Lapides v. Bd. of Regents of Univ. Sys. of Ga.,* 535 U.S. 613, 618 (2002); *Lee-Thomas*, 666 F.3d at 249. But, the test to determine whether a State has waived its immunity from suit in federal court is a "stringent" one. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 240 (1985), *superseded on other grounds, as recognized in Lane v. Pena*, 518 U.S.

187, 198 (1996). Under *Atascadero*, a court may find that a state has waived its Eleventh Amendment immunity "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Id.* (internal quotation marks and alteration omitted); *accord Lee-Thomas*, 666 F.3d at 250-51.

Maryland has not waived its Eleventh Amendment immunity to a suit of this kind in federal court. *See* ECF 8-1 at 10 (defending this suit on the grounds of sovereign immunity).

Finally, *Ex parte Young*, 209 U.S. 123 (1908), provides an exception to the general law, permitting prospective injunctive relief to correct an ongoing violation if the suit is brought against state officials in their official capacities. To avoid an Eleventh Amendment bar to suit under this doctrine, the complaint must be lodged against a state official and it must "alleg[e] an ongoing violation of federal law and see[k] relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

Myers requests prospective injunctive relief in her Complaint in the form of reinstatement within the State system and removal of the termination from her record. ECF 1 at 7. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997) (recognizing exception to Eleventh Amendment immunity for certain suits seeking declaratory and injunctive relief against state officers in their individual capacities); *Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013) ("Because reinstatement is a form of prospective relief, the refusal to provide that relief when it is requested can constitute an ongoing violation of federal law such that the *Ex parte Young* exception applies."). But, Myers did not name any state officials as defendants in the complaint. ECF 1. *See Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012)

("The [*Ex parte Young*] exception is also inapplicable here, because the complaint does not name as defendants any officials of the State of Maryland.").

To the extent Myers seeks monetary damages, her suit is barred by the Eleventh Amendment. ECF 1 at 7 (seeking monetary damages in the form of unemployment benefits and punitive damages). The *Ex parte Young* exception does not apply. Therefore, Myers' ADA claims must be dismissed because they are barred by the Eleventh Amendment. Dismissal shall be without prejudice.

**D. CONCLUSION**

For the aforementioned reasons, defendant Maryland Department of Agriculture's motion to dismiss (ECF 8) is granted. A separate Order follows.

June 21, 2018
Date

/s/
Ellen L. Hollander
United States District Judge